| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>CHRISTOPHER JORDAN DORNER | DOCKET NO. SA13-37M<br><br>MAGISTRATE'S CASE NO. |

| Complaint for violation of Title 18, United States Code, Section 1073. |||
|---|---|---|
| NAME OF MAGISTRATE JUDGE<br>HONORABLE MARC L. GOLDMAN | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>SANTA ANA, CA |
| DATE OF OFFENSE<br>On or about<br>February 7, 2013 | PLACE OF OFFENSE<br>ORANGE COUNTY | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about February 7, 2013, in Orange County, within the Central District of California and elsewhere, defendant Christopher Jordan Dorner, fled the State of California in order to avoid prosecution in violation of Title 18, United States Code, Section 1073.

[STAMP: CLERK, U.S. DISTRICT COURT  FEB - 7 2013  CENTRAL DISTRICT OF CALIFORNIA  BY _____ DEPUTY]

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
   (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT /S/<br>CRAIG McCLUSKY |
|---|---|
| | OFFICIAL TITLE<br>INSPECTOR<br>United States Marshal Service |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br><br>MARC L. GOLDMAN | DATE<br>February 7, 2013 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.
   JR:cp REC:Detention

# AFFIDAVIT

I, Craig McClusky, being duly sworn, hereby declare:

1. I am an Inspector United States Marshal and have been employed by the by the United States Marshals Service for 11 years. I graduated from the Federal Law Enforcement Training Center for Criminal Investigators in 2003. During my tenure as an Inspector, I have conducted and participated in numerous investigations of criminal activity. I am currently assigned to the Pacific Southwest Regional Fugitive Task Force and have served in this capacity for the last six years. One of my responsibilities is to assist state and local authorities in locating and apprehending violent fugitive criminals.

2. This affidavit is made in support of a criminal complaint and arrest warrant against CHRISTOPHER JORDAN DORNER ("DORNER") for Unlawful Flight to Avoid Prosecution in violation of Title 18, United States Code, Section 1073.

3. This affidavit is intended to show that there is sufficient probable cause for the requested criminal complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. The statements set forth in this affidavit are based on my experience, training, consultation with other investigators and other reliable sources of information relative to this investigation

4. On or about February 6, 2013, the Irvine Police Department requested assistance from the United States Marshals Service in locating a fugitive, that is, DORNER. Today, February 7, 2013, I spoke with Sergeant Ericka Hutchcraft of the Irvine Police Department. Based on my conversations with Sergeant Hutchcraft, I learned the following:

   a. On February 3, 2013, two individuals were found in an Irvine parking lot, dead from multiple gunshot wounds. One of the victims was the daughter of R.Q., a former Los Angeles Police Department official.

b. On or about February 6, 2013, Sergeant Hutchcraft learned that DORNER had posted on the same Facebook page a lengthy message issuing violent threats against various LAPD officials, including R.Q., as well as their families. The message indicated that DORNER may have already begun carrying out his threats.

c. On or about February 6, 2013, the Orange County Superior Court issued an arrest warrant for DORNER under case no. 13-01503. DORNER who was charged with multiple violations of California Penal Code Section 187, Homicide. The affiant for the warrant was Sergeant Hutchcraft.

5. On or about February 7, 2013, LAPD Chief Charlie Beck issued a press release, which I have reviewed. The press release includes, among other things, the following information:

a. At or about 1:30 A.M. on February 7, 2013, in Corona, California, an eyewitness reported seeing an individual matching DORNER's description at a gas station and reported his sighting to an LAPD officer who was detailed to the area to protect one of the officials whom DORNER had threatened. When the officer drove by the gas station, the suspect exited his vehicle and fired an assault rifle at the officer, hitting the officer's vehicle.

b. At or about 2:00 A.M., in Riverside, California, two Riverside Police Department officers who were in the area searching for DORNER were fired upon by an unidentified assailant while they were in their police vehicle at a red light. Both officers were struck; one of them was killed.

6. Sergeant Hutchcraft has informed me that the ammunition used in the shootings was consistent with the use of an assault rife.

7. On February 7, 2013, I spoke with Sergeant Hutchcraft, who

had spoken with Detective Robert Anschick of the San Diego Police Department. Based on my conversations with Sergeant Hutchcraft, I learned the following:

    a. On February 7, 2013, Detective Anschick and other officers had interviewed C.C., a boat captain in San Diego. C.C. reported that at approximately 3:00 A.M. today, a man matching DORNER's description had subdued him and attempted to steal his boat, stating that he (DORNER) would be taking the boat to Mexico, and that C.C. would be able to recover the boat there. C.C. said that the attempt failed when the bow line of the boat became caught in the boat's propeller, and the suspect fled.

    b. Detective Anschick later found DORNER's personal belongings, including his wallet and identification cards, near the U.S./Mexico border at the San Ysidro Point of Entry.

    c. A gate guard at the Point Loma naval base in San Diego, California reported that later that same day, he had seen a man matching DORNER's description attempting to gain access to the base.

    8. On or about February 7, 2013, Sergeant Hutchcraft told me that she had spoken with R.Q., who stated that at 12:30 P.M. today, he had received a phone call from an individual identifying himself as DORNER, who stated that R.Q. "should have done a better job of protecting his daughter." The phone call was traced to Vancouver, Washington. Based on my training and experience, and the timing of the other sightings of DORNER, I do not believe that he was in Washington at the time of that call.

    9. The USMS has also been tracking the movements of J.Y., a

known associate of DORNER. Public records indicate that a family member of J.Y. owns a residential property in Arrow Bear, California. Inspector Andrew Haggerty of the USMS informed me that at approximately 12:45 P.M. today, he and members of the San Bernardino County Sheriff's Office, conducting surveillance on the property, found a vehicle nearby matching the one in which the suspect in the Corona shooting had been seen: a grey 2005 Nissan Titan. The vehicle was burning. USMS Inspector Dave Diliberti has told me that at approximately 12:25 P.M. saw J.Y. in Costa Mesa, California.

10. Based upon the foregoing, including the recent observations of a suspect matching DORNER's description attempting to flee to Mexico, as well as my training and experience, that there is probable cause to believe that DORNER has moved and traveled in interstate and foreign commerce from California to Mexico with the intent to avoid prosecution, in violation of Title 18, United States Code, Section 1073.

/S/
_____
Craig McClusky
Inspector
United States Marshals Service

Sworn to before me and subscribed
in my presence on this 7th day
of February, 2013

MARC L. GOLDMAN
_____
THE HON. MARC L. GOLDMAN
United States Magistrate Judge